# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| ZEKIELA RILEY § | |
| § | |
| v. § | Case No. 4:12cv62 |
| § | (Judge Mazzant) |
| BEN WILBANKS, WAL-MART § | |
| STORES, INC., AND WAL-MART § | |
| STORES TEXAS LLC § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Summary Judgment (Dkt. #29). Having considered the relevant pleadings, the Court finds that the motion should be denied.

## **Background**

On January 25, 2010, Plaintiff was shopping at Wal-Mart in Denton, Texas. After leaving her minor children in the car, Plaintiff went inside the store with her nephew, KR.[1]  When Plaintiff and KR completed their shopping, they approached a self-checkout register.  As she rang up her items, Plaintiff noticed that she was having trouble with the scanner.  As a result, she called a Wal-Mart assistant to her self-checkout station on three separate occasions.  On each occasion, the Wal-Mart assistant would assist Plaintiff to the point where she could continue checking out her other items.

Defendant Ben Wilbanks ("Wilbanks") was an asset protection associate at the Wal-Mart where Plaintiff was shopping.  Wilbanks asserts that he observed Plaintiff shoplifting multiple items at a self-checkout register. Wilbanks asserts that he observed Plaintiff intentionally placing her fingers over merchandise barcodes and positioning barcodes away from the register in order to

---

[1] Since her nephew is a minor, the Court will refer to him by his initials, KR.

prevent the register from scanning her merchandise. Wilbanks asserts that he observed Plaintiff placing her finger over the barcode on a box of Q-Tips and a carton of eggs, and Defendants assert that Plaintiff further failed to weigh her groceries on the merchandise scales.

As Plaintiff left the store and passed all points of sale, Wilbanks and another asset protection associate, Jeff Pratt ("Pratt"), approached Plaintiff. Wilbanks identified himself and told Plaintiff he needed to talk to her about some items in her basket which had not been purchased. Plaintiff handed her receipt to Pratt, and Pratt confirmed there was at least one item in her basket that was not on the receipt – a large crate of eggs. Wilbanks then asked Plaintiff and KR to come into the asset protection office so they could check the remaining items in the basket as compared to her receipt. The asset protection office was only several feet from the place where Plaintiff was approached by Wilbanks and Pratt. Plaintiff and KR walked into the asset protection office in compliance with the Wal-Mart employees' verbal requests. No Wal-Mart employee ever touched or physically directed Plaintiff or KR into the asset protection office. There were eleven items of merchandise that were not paid for, totaling $27.27.

Once in the asset protection office, Plaintiff and KR were asked to sit on a bench while the Wal-Mart employees conducted their investigation. Pratt and asset protection manager Kathy Turner ("Turner") removed merchandise from Plaintiff's shopping cart in order to determine the items which had been stolen and their value. As the Wal-Mart employees continued to identify multiple stolen items, Defendants assert that Plaintiff became increasingly agitated. Defendants assert that the entire process of conducting the inventory and copying Plaintiff's driver's license took approximately ten minutes.

Defendants assert that Plaintiff then attempted to leave the office by pushing Turner away from the office door. Defendants' investigation was not complete at the time Plaintiff attempted to leave. Pratt was the first to respond to Plaintiff's physical aggression towards Turner, and he placed Plaintiff's arms behind her back. Despite being physically directed away from the office door, Plaintiff continued to struggle violently to leave. Wilbanks and Pratt attempted to direct Plaintiff back to the bench. The Wal-Mart employees also gave Plaintiff verbal commands to sit down so they could complete the investigation. Plaintiff failed to comply with all verbal commands and physical attempts to redirect her to the bench. As a result, Turner called the Denton Police Department.

Defendants further assert that Plaintiff continued to physically combat the Wal-Mart employees. During the struggle, Defendants assert that she made multiple and continuous efforts to bite Pratt. The altercation was eventually brought under control when Wilbanks handcuffed Plaintiff. However, even after she was handcuffed, Plaintiff continued to try to stand up and resist her detention. The Wal-Mart employees continued investigating Plaintiff's shoplifting while waiting for the police to arrive. Upon arrival, Plaintiff was transferred to the custody of the Denton Police Officer.

Plaintiff asserts that after conducting the inventory, Wal-Mart had Plaintiff and KR wait an additional twenty to thirty minutes in the detention room. According to Plaintiff, the physical struggle between Plaintiff and the Wal-Mart employees occurred after Plaintiff had been detained between thirty to forty minutes.

During the entire time of her detention, Plaintiff asserts that she told the Wal-Mart employees that she had children in the car in need of supervision. At the time of this detention,

3

Wilbanks admitted that his team, which was Wilbanks, Pratt, and Turner, were not going to call the police. Plaintiff asserts that the most serious criminal offense Plaintiff could have been accused of was a Class C Misdemeanor for theft under $50.00. *See* Texas Penal Code § 31.03(e)(1)(A). This classification of offense calls for no jail time, but only a fine which cannot exceed $500.00. *See* Texas Penal Code § 12.23. Plaintiff asserts that Wal-Mart detained the Plaintiff an additional twenty to thirty minutes after inventorying her groceries.

Plaintiff asserts that after approximately thirty to forty minutes of detention, Plaintiff attempted to leave the detention room. The video attached to Defendants' Motion for Summary Judgment shows a large, male Wal-Mart employee wrestle Plaintiff to the ground as she attempted to leave the detention room. Plaintiff asserts that rather than an even-handed struggle where the Plaintiff was actually the aggressor, as suggested by the Defendants, the video clearly shows Pratt slam Plaintiff's head into the wall and, separately, her head against a shopping cart. Plaintiff was then forced onto her stomach where Pratt and Wilbanks sat or leaned on, at various times, Plaintiff's back.

Once handcuffed, Pratt and Wilbanks moved Plaintiff into a seated position with her right leg placed, as the video shows, awkwardly behind her. Wilbanks and Pratt had her remain in this position while Wilbanks stood on her left ankle.

The police eventually arrived to see Plaintiff on the floor handcuffed with the contents of her purse dumped out on the floor. The police officer put the things that had been dumped out back in Plaintiff's purse and took her away in a police car. Plaintiff states that she was let out of the police car at the station after being in custody of the police for about ten minutes. The charges against

Plaintiff were dropped by the City of Denton Attorney's Office in municipal court.

Plaintiff filed suit against Defendants based on theories of assault and battery and false imprisonment. On February 15, 2013, Defendants filed a motion for summary judgment (Dkt. #29). On March 4, 2013, Plaintiff filed a response (Dkt. #31). No reply was filed. This case is currently set for trial for May 28, 2013.

## **Legal Standard**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson,* 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the

nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News*, *Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248-49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257.

## Analysis

Defendants raise the following two issues: (1) does the summary judgment evidence conclusively demonstrate Defendants' actions were justified as a matter of law pursuant to the shopkeeper's privilege; and (2) does the summary judgment evidence conclusively establish Defendants' actions were justified for the protection of themselves and their property?

**False Imprisonment Claim**

Defendants first assert that Plaintiff cannot prevail on her false arrest claim because Defendants' actions were justified by the Shopkeeper's Privilege.

To prevail under a false imprisonment claim, a plaintiff must prove (1) willful detention, (2) without consent, and (3) without authority of law. *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985). Absence of adequate justification or authority of law is an essential element of a cause of action for false imprisonment. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). If the alleged detention was performed with authority of law, no false imprisonment occurs. *Wal-Mart Stores v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998). The only issue in contention in this case is the third element.

Defendants assert that they were legally justified to detain Plaintiff pursuant to the Shopkeeper's Privilege. The "shopkeeper's privilege" expressly grants an employee the authority of law to detain a customer to investigate the ownership of property in a reasonable manner and for a reasonable period of time if the employee has a reasonable belief that the customer has stolen or is attempting to steal store merchandise. TEX. CIV. PRAC. & REM. CODE ANN. § 124.001.

The Shopkeeper's Privilege does not require that the person detaining another confirm or refute the detainee's claims regarding the merchandise, nor does it prevent the suspected shoplifter from being held for a reasonable time in order to deliver him to the police. *Resendez*, 962 S.W.2d at 541; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 124.001; TEX. CRIM. PROC. CODE ANN. art. 18.16. By the statute's plain terms, the application of the Shopkeeper's Privilege is not dependent on whether Plaintiff actually stole something. Rather, the Shopkeeper's Privilege applies if a person, such as the Wal-Mart employee, believes that Plaintiff was attempting to steal. "[L]iability is not based on the customer's actual guilt or innocence, but rather on the reasonableness of the shopkeeper's actions under the circumstances." *Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370, 372 (Tex. 2004).

Defendants first argue that they had a reasonable belief Plaintiff was stealing or attempting to steal store merchandise. Defendants point to the following evidence to support their motion: (1) Wilbanks observed Plaintiff shoplifting multiple items at the self-checkout register; (2) Wilbanks observed Plaintiff intentionally placing her fingers over merchandise barcodes and positioning barcodes away from the registers in order to prevent the registers from scanning her merchandise; (3) Wilbanks observed Plaintiff intentionally placing her finger over the barcode on a box of Q-Tips

and a carton of eggs; (4) Plaintiff failed to allow the merchandise scales to weigh her groceries; (5) Plaintiff passed all points of sales without paying for eleven items of merchandise; (6) Defendants confirmed Plaintiff had at least one item in her basket before she was detained; (7) Plaintiff admits in her deposition there were items in her basket for which she did not pay; and (8) Defendants' premises security expert Dr. Merlyn Moore has opined that Defendants acted reasonably in their beliefs that Plaintiff was shoplifting merchandise from the store.

Plaintiff responds by asserting that the video does not show a closeup of her hands or the products in question and it is difficult to see how Wilbanks could see the intentional misuse of the scanner by Plaintiff. Plaintiff also asserts that there is no evidence that she was aware that her finger was on the barcode. Plaintiff also asserts that when attempting to explain what items he believed, from watching the surveillance video, Plaintiff stole, Wilbanks gave contradictory testimony. Plaintiff disputes that she was covering up barcodes with her finger. Plaintiff argues that the theft was unintentional.

The key piece of evidence in this case is the videotape of the incident. Wal-Mart's security cameras captured the entire incident, and the videotape is the best evidence of what occurred. No one disputes that the video correctly portrays what occurred or that there was any defect with the recording device. The Court finds that there is a material issue on whether Defendants had a reasonable belief that Plaintiff was stealing or attempting to steal Wal-Mart merchandise. The Court has reviewed the video, and the Court can see how an untrained eye may not be able to tell whether Plaintiff was intentionally taking merchandise. The fact that Defendant actually had eleven items that

were not paid for is immaterial to this question. *See Wal-Mart Stores, Inc. v. Cockrell*, 61 S.W.3d 774, 778 (Tex. App.--Corpus Christi 2001, no pet.).

Defendants next assert that Defendants detained Plaintiff for a reasonable amount of time. Defendants correctly point out that the Supreme Court of Texas has further held that ten to fifteen minutes is a reasonable amount of time. *Resendez*, 962 S.W.2d at 540. Defendants assert that the evidence conclusively demonstrates Plaintiff was detained for a reasonable period of time. They argue that only seven minutes passed from the time Plaintiff was initially approached to the time she shoved Turner away from the office door. They next argue that only fourteen minutes passed from the total time Plaintiff was approached until the time the police arrived and took custody of Plaintiff. Finally, Defendants assert that their premises security expert Dr. Merlyn Moore has opined that the length of the detention was reasonable given the totality of the circumstances and the violence exhibited by Plaintiff.

Plaintiff asserts that Defendants rely upon the video as conclusive evidence that Plaintiff's detention was only fourteen minutes, but that Plaintiff testified that her detention was thirty to forty minutes long prior to her attempting to leave the room. Plaintiff also argues that her time in police custody should also be considered. Plaintiff also argues that her detention was for an unreasonable period of time because she had children in the car who required supervision.

The Court finds that the video does conclusively demonstrate that Plaintiff was only detained for fifteen minutes, which is considered a reasonable time.

The last issue raised by Defendants pertains to whether Plaintiff's detention was handled in

a reasonable manner. The Court finds that there is a material fact issue on this question. The Court denies Defendants' motion on Plaintiff's false imprisonment claim because Defendants failed to establish as matter of law that Defendants' actions were justified by the Shopkeeper's Privilege.

**Assault Claim**

Plaintiff asserts that she suffered a series of physical blows from Pratt and Wilbanks that were both physically painful and offensive. Defendants move for summary judgment that Plaintiff cannot prevail on her assault and battery claims because she caused her own injuries, and Defendants acted in self defense. The definition of assault is the same, whether in a civil or criminal trial. *Rogers v. Peeler*, 146 S.W.3d 765, 769 (Tex. App.--Texarkana 2004, no pet.) (citing *Forbes v. Lanzl*, 9 S.W.3d 895, 900 (Tex. App.--Austin 2000, pet. denied)). The elements of a cause of action for assault by infliction of bodily injury are (1) that the defendant acted intentionally, knowingly, or recklessly; and (2) the defendant's contact caused bodily injury to the plaintiff. TEX. PENAL CODE § 22.01(a)(1); *Moore v. City of Wylie*, 319 S.W.3d 778,782 (Tex. App.--El Paso 2010, no pet.).

The Court finds that Defendants have failed to establish that there is no material fact issue on this claim, and summary judgment should be denied.

It is therefore ORDERED that Defendants' Motion for Summary Judgment (Dkt. #29) is hereby DENIED. This case is set for jury trial on May 28, 2013.

**SIGNED this 24th day of April, 2013.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE